# EXHIBIT 1

RECORDING REQUESTED BY
Chicago Title Company [redacted]
AND WHEN RECORDED MAIL DOCUMENT TO:

NAME Celebrity Home Loans, LLC
STREET ADDRESS One Mid America Plaza
Suite 800
CITY, STATE & ZIP CODE Oakbrook Terrace, IL 60181

Electronically
Recorded in Official Records
San Bernardino County
Bob Dutton
Assessor-Recorder-County Clerk

**DOC# 2022-0054403**

02/10/2022
09:43 AM
SAN

14311

Titles: 1 Pages: 15

| | |
|---|---|
| Fees | $56.00 |
| Taxes | $0.00 |
| CA SB2 Fee | $0.00 |
| Total | $56.00 |

SPACE ABOVE FOR RECORDER'S USE ONLY

# Deed of Trust

**Title of Document**

**Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).**

Reason for Exemption:

■ Exempt from fee per GC 27388.1, recorded in connection with a transfer subject to the imposition of documentary transfer tax (DTT), or

Exempt from fee per GC 27388.1, recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier, or

Exempt from fee per GC 27388.1, recorded in connection with a transfer that was subject to documentary transfer tax which was paid on document recorded previously on ____________(date) as document number ___________of Official Records. (Cap. $225.00)

Exempt from fee per GC 27388.1, fee cap of $225.00 reached, and/or

Exempt from fee per GC 27388.1, not related to real property

**Failure to include an exemption reason will result in the imposition of the $75.00 Building Homes and Jobs Act fee. Fees collected are deposited to the State and may not be available for refund.**

THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

Recording Requested By:
Celebrity Home Loans, LLC, a Limited
Liability Company

After Recording Return To:
Celebrity Home Loans, LLC
One Mid America Plaza, Suite 800
Oakbrook Terrace, IL 60181
855-840-1736

Prepared By:
Celebrity Home Loans, LLC
One Mid America Plaza, Suite 800
Oakbrook Terrace, IL 60181
630-572-8200

[redacted]

[Space Above This Line For Recording Data]

# DEED OF TRUST

[redacted]

MERS PHONE #: 1-888-679-6377

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **February 4, 2022,** together with all Riders to this document.

(B) "Borrower" is **MICHAEL VAUGHAN AND OLGA VAUGHAN, HUSBAND AND WIFE AS JOINT TENANTS.**

Borrower's address is **15326 El Centro St, Hesperia, CA 92345.**

Borrower is the trustor under this Security Instrument.

(C) "Lender" is **Celebrity Home Loans, LLC.**

Lender is **a Limited Liability Company,** organized and existing under the laws of **Illinois.** Lender's address is **One Mid America Plaza, Suite 800, Oakbrook Terrace, IL 60181.**



[redacted]

[redacted]

(D) "Trustee" is Chicago Title Company.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) **"Note"** means the promissory note signed by Borrower and dated **February 4, 2022.** The Note states that Borrower owes Lender **SIX HUNDRED FORTY SEVEN THOUSAND TWO HUNDRED AND NO/100*************************************************************** Dollars (U.S. $647,200.00 )** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **March 1, 2052.**

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |
| ☐ V.A. Rider | | |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and



[redacted]

[redacted]

all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** [Type of Recording Jurisdiction] of **San Bernardino** [Name of Recording Jurisdiction]:

[redacted]**CHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**

which currently has the address of **7172 JARGON ST, OAK HILLS,**

[Street] [City]

California **92344-9795** ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice



[redacted]

[redacted]

to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.



[redacted]

[redacted]

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,



[redacted]

[redacted]

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water



[redacted]

[redacted]

from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration

[redacted]

period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.



[redacted]

[redacted]

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all



[redacted]

[redacted]

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).



[redacted]

[redacted]

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



[redacted]

[redacted]

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

[signature] 2/7/22 (Seal)
MICHAEL VAUGHAN DATE

[signature] 2/7/22 (Seal)
OLGA VAUGHAN DATE

| |
|---|
| **A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.** |

**State of CALIFORNIA**
**County of SAN BERNARDINO**

**On** February 7, 2022 **, before me,** Margaret Soulé, notary public **(here insert name and title of the officer), personally appeared MICHAEL VAUGHAN AND OLGA VAUGHAN, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.**

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

**WITNESS my hand and official seal.**

MARGARET SOULE
Notary Public - California
San Bernardino County
Commission # 2233933
My Comm. Expires Mar 11, 2022

**Signature** [signature]
**(NOTARY)**

**(SEAL)**



[redacted]

[redacted]

**Lender: Celebrity Home Loans, LLC**
**NMLS ID:** [redacted]
**Loan Ori**[redacted]**than La Rue**
**NMLS ID:** [redacted]



[redacted]

## EXHIBIT "A"
Legal Description

[redacted]

PARCEL 2 OF PARCEL MAP 14211, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 174 OF PARCEL MAPS, PAGES 11 AND 12 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

# EXHIBIT 2

[redacted] [redacted]

# NOTE

February 4, 2022 | Oakbrook Terrace, | Illinois
[Date] | [City] | [State]

7172 JARGON ST, OAK HILLS, CA 92344-9795
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$647,200.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Celebrity Home Loans, LLC, a Limited Liability Company.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.125 %**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **April 1, 2022.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **March 1, 2052,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **One Mid America Plaza, Suite 800
Oakbrook Terrace , IL 60181**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$3,136.65.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any



[redacted]

[redacted]

sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which



[redacted]

[redacted]

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_______________________________________________ (Seal)
MICHAEL VAUGHAN

**Lender: Celebrity Home Loans, LLC**
**NMLS ID: [redacted]**
**Loan Orig[redacted]than La Rue**
**NMLS ID: [redacted]**

**[Sign Original Only]**



[redacted]

## Allonge to the Note

**Name:** Michael Vaughan

[redacted]

**Address:** 7172 JARGON ST

OAK HILLS, CA 92344-9795

**Loan Amount:** $647,200.00

**Rate:** 4.125%

**Note Date:** 02/04/2022

**Pay to the order of**

**Without recourse, Celebrity Home Loans, LLC**

PETE GABRIONE, CHIEF OPERATING OFFICER

[redacted]

# EXHIBIT 3

Electronically
Recorded in Official Records
San Bernardino County

Assessor-Recorder-County Clerk

RECORDING REQUESTED BY:

ServiceLink

WHEN RECORDED MAIL TO:

Seneca Mortgage Servicing LLC
c/o RoundPoint Mortgage Servicing LLC
446 Wrenplace Road
Fort Mill, SC 29715

DOC# 2025-0123568

05/30/2025
08:16 AM
SAN

T1585

| | |
|---|---|
| Titles: 1 | Pages: 1 |
| Fees | $26.00 |
| Taxes | $0.00 |
| CA SB2 Fee | $75.00 |
| Total | $101.00 |

[redacted]

[redacted]

MERS Phone: 888-679-6377
MERS Address: P.O Box 2026, Flint, MI 48501-2026

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, and transfers to **Seneca Mortgage Servicing LLC** all its interest under that certain Deed of Trust dated as of February 4, 2022, executed by MICHAEL VAUGHAN AND OLGA VAUGHAN, HUSBAND AND WIFE AS JOINT TENANTS as Trustor(s), to CHICAGO TITLE COMPANY as Trustee and recorded February 10, 2022 as Instrument No. 2022-0054403 and that said Deed of Trust was modified by Modification Agreement recorded October 9, 2024 as Instrument Number 2024-0242457 of official records in the Office of the County Recorder of San Bernardino County, California.

All rights accrued or to accrue under said Deed of Trust including the right to have reconveyed, in whole or in part, the real property more commonly known as **7172 JARGON ST, OAK HILLS, CA 92344-9795** and more fully described in said Deed of Trust.

Dated: 5/27/25

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, as nominee for CELEBRITY HOME LOANS, LLC, its successors and assigns**

By: Tracy Vines

Title: Assistant Secretary

State of South Carolina
County of York

On this 27 day of May, 2025, before me personally appeared Tracy Vines, Assistant Secretary, who provided satisfactory evidence of her identification to be the person whose name is subscribed to this instrument and she acknowledged that she executed the foregoing instrument by her signature here.

Document Holder's Signature

Sworn to (or affirmed) and subscribed before me this the 27 day of May, 2025.

Official Signature of Notary

Elizabeth Cantrell, Notary Public
Notary's printed or typed name

York County, South Carolina

My Commission expires: August 17, 2033

ELIZABETH CANTRELL
NOTARY PUBLIC
MY COMM. EXP. 8/17/2033
SOUTH CAROLINA

# EXHIBIT 4

[redacted]

**Recording Requested By:**
RoundPoint Mortgage Servicing LLC
446 Wrenplace Road
Fort Mill, SC 29715

**After Recording Return To:**
RoundPoint Mortgage Servicing LLC C/O:
Mortgage Connect, LP
Attn: Loan Mod Processing Team
600 Clubhouse Drive
Moon Township, PA 15108
[redacted]

This document was prepared by RoundPoint Mortgage Servicing LLC, 446 Wrenplace Road Fort Mill, SC 29715, 877-426-8805.

Exhibit "A" Legal Description is attached to Page ______

____________________Space Above This Line For Recording Data____________________

**Original Principal Amount:** $647,200.00
**Unpaid Principal Amount:** $644,513.75
**New Principal Amount:** $666,672.94

[redacted]

Original Security Instrument recorded on Date **02/10/2022** in Book or Liber ____________, at page(s) __________, and/or as Document/Instrument Number **2022-0054403**, in the Records of **San Bernardino County, CALIFORNIA**.

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement") between **MICHAEL VAUGHAN AND OLGA VAUGHAN, HUSBAND AND WIFE AS JOINT TENANTS** whose address is 7172 JARGON ST, OAK HILLS, CA 92344 ("Borrower" or "I") and **SENECA MORTGAGE SERVICING LLC** whose address is 446 Wrenplace Road, Fort Mill, SC 29715 ("Lender"), and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** ("MERS") as Beneficiary, as Nominee for Lender, its Successors and Assigns, whose address is P.O. Box 2026, Flint, MI 48501-2026 ("Beneficiary"), is given on 09/23/2024, and amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), made by **MICHAEL VAUGHAN AND OLGA VAUGHAN, HUSBAND AND WIFE AS JOINT TENANTS** to **MERS AS BENEFICIARY, AS NOMINEE FOR CELEBRITY HOME LOANS LLC, ITS SUCCESSORS AND ASSIGNS** for **$647,200.00** and interest, dated **02/04/2022** and recorded on Date **02/10/2022** in Book or Liber ____________, at page(s) __________, and/or as Document/Instrument Number **2022-0054403**, in the Records of **San Bernardino County, CALIFORNIA**, and (2) the Note bearing the same date as and secured by the Security



[redacted]

[redacted]

[redacted]

Instrument, which was entered into as security for the performance of the Note and encumbers the real and personal property described and defined in the Security Instrument as the "Property," located at **7172 JARGON ST OAK HILLS, CA 92344.** ***See Exhibit A for Legal Description;***

[redacted]

Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation that is acting solely as a nominee for the owner and holder of the promissory note, its successors and assigns. The MERS address is P.O. Box 2026, Flint, MI 48501-2026. The MERS telephone number is (888) 679-MERS (6377).

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 09/23/2024, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $666,672.94, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.125%, from 10/01/2024. Borrower promises to make monthly payments of principal and interest of U.S. $2,838.33, beginning on the 1st day of November, 2024, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.125% will remain in effect until principal and interest are paid in full. If on 10/01/2064 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument;

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:



[redacted]

[redacted]

[redacted]

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note;

(b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder;

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender;

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument;

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender;

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower;

(f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan;

 [redacted]

[redacted]

[redacted]

(g) If any pending foreclosure action is dismissed or withdrawn as a result of entering into this Agreement, Borrower will remain liable for and bear his/her/their own fees and costs incurred in connection with such foreclosure proceedings, if permitted by applicable law;

(h) The mortgage insurance premiums on the loan, if applicable, may increase and the date on which Borrower may request cancellation of mortgage insurance may change as a result of modifying the loan;

(i) Any Borrower who co-signed the Security Instrument but did not execute the Note (a "Co-signer") and has not assumed the debt: (a) is co-signing this Agreement only to acknowledge the Agreement; (b) is not personally obligated to pay the sums secured by the Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note or the Security Instrument without the Co-signer's consent.

6. Borrower further understands and agrees that:

(a) Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Beneficiary ("Grantee") of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address of P.O. Box 2026, Flint, MI 48501-2026. The MERS telephone number is (888) 679-MERS (6377);

(b) Notices. Borrower acknowledges that any notice Borrower provides to Lender must also be provided to MERS as Nominee for Lender until MERS' Nominee interest is terminated. Any notice provided by Borrower in connection with the Security Instrument will not be deemed to have been given to MERS until actually received by MERS;

(c) Substitute Trustee. In accordance with applicable law, Lender or MERS may from time to time appoint a successor trustee to any Trustee appointed under the Security Instrument who has ceased to act. Without conveyance of the Property, the successor trustee will succeed to all the title, power and duties conferred upon Trustee in the Security Instrument and by applicable law.

7. Lender acknowledges that until it directs MERS to assign MERS's Nominee interest in the Security Instrument, MERS remains the Nominee for Lender, with the authority to exercise the rights of Lender.

8. If any Borrower under this Agreement is a confirmed successor in interest, you are not liable for the mortgage debt and cannot be required to use your assets to pay the mortgage debt unless you have agreed to assume the mortgage loan obligation under State law. However, the Lender has a security interest in the property and has a right to foreclose on the property, when permitted by law and authorized under the Note and Security Instrument.

 [redacted]

[redacted]

[redacted]

9. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked. and Borrower has been advised of the amount needed to fully fund any Escrow Items.

10. Borrower will pay to Lender on the day payments are due under the Note and Security Instrument as amended by this Agreement, until the loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Note and Security Instrument; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Note and Security Instrument; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Note and Security Instrument, as the phrase "covenant and agreement" is used in the Note and Security Instrument. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Note and Security Instrument and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Note and Security Instrument, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph;

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law;

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any

 [redacted]

[redacted]

[redacted]

interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds unless applicable law prohibits such agreement. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA;

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments;

Upon payment in full of all sums secured by the Note and Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging. ☐

 [redacted]

[redacted]

[redacted]

By SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

**Sign here to execute Modification Agreement**

Michael Vaughan
(Must be signed exactly as printed)
10 / 05 / 2024
Signature Date (MM/DD/YYYY)

**Sign here to execute Modification Agreement**

Olga Vaughan
(Must be signed exactly as printed)
10 / 05 / 2024
Signature Date (MM/DD/YYYY)

*[Space below this line for Acknowledgement]*

See Attached California Certificate of Acknowledgement Page.



[redacted]

[redacted]

[redacted]

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California }

County of San Bernardino }

On October 5, 20 24 before me, Eva Karina Banuelos,

a Notary Public, personally appeared Michael Vaughan and Olga Vaughan, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

EVA KARINA BANUELOS
Notary Public - California
San Bernardino County
Commission # 2496451
My Comm. Expires Aug 3, 2028

Notary Public [Seal]

**(Please ensure seal does not overlap any language or print)**



[redacted]

[redacted]

[redacted]

**DO NOT WRITE BELOW THIS LINE.**

****************************************************************************

THIS SECTION IS FOR INTERNAL USE ONLY

Seneca Mortgage Servicing LLC
By: RoundPoint Mortgage Servicing LLC, Attorney-in-Fact

By: ______________________ Dated: ______________
Name: ______________________
Title: Assistant Vice President

______________*[Space below this line for Acknowledgement]*______________

STATE OF PENNSYLVANIA COUNTY OF ALLEGHENY

On the ____ day of ______________ in the year ______ before the undersigned Notary Public, personally appeared by physical presence ______________________, Assistant Vice President of RoundPoint Mortgage Servicing LLC, as Attorney-in-Fact for Seneca Mortgage Servicing LLC, personally known to me or proved to me on the basis of satisfactory evidence of identification to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they voluntarily executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person or entity upon behalf of which the person or entity acted, executed the instrument for its stated purpose.

Personally Known ________ OR Type of Identification Produced: ______________

WITNESS my hand and official seal.

______________________ Notary Signature

______________________ Notary Public Printed Name
*(exactly as printed on seal)*
______________________ Notary Public Commission
Expiration Date

Signatures continue on the following page.

 [redacted]

[redacted]

[redacted]

**DO NOT WRITE BELOW THIS LINE.**

**************************************************************************

THIS SECTION IS FOR INTERNAL USE ONLY

**Mortgage Electronic Registration Systems, Inc.,**

By: ______________________ Date: ______________

Name: ____________________________, Assistant Vice President

______________ *[Space below this line for Acknowledgement]* ______________

STATE OF PENNSYLVANIA COUNTY OF ALLEGHENY

On the ____ day of _______________ in the year ______ before the undersigned Notary Public, personally appeared by physical presence ______________________________, Assistant Vice President of Mortgage Electronic Registration Systems, Inc., as nominee for Lender, its successors and assigns, personally known to me or proved to me on the basis of satisfactory evidence of identification to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they voluntarily executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person or entity upon behalf of which the person or entity acted, executed the instrument for its stated purpose.

Personally Known ____________OR Type of Identification Produced: ________________

WITNESS my hand and official seal.

__________________________ Notary Signature

__________________________ Notary Public Printed Name
*(exactly as printed on seal)*

__________________________ Notary Public Commission
Expiration Date



[redacted]

[redacted]

[redacted]

# EXHIBIT A

All that certain lot or piece of ground situated in COUNTY SAN BERNARDINO COUNTY, CALIFORNIA.

Parcel 2 Of Parcel Map 14211, County Of San Bernardino, State Of California, As Per Map Recorded In Book 174 Of Parcel Maps, Pages 11 And 12 Of Maps, In The Office Of The County Recorder Of Said County



[redacted]

[redacted]

[redacted]

# EXHIBIT 5

**Fill in this information to identify your case and this filing:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Michael** | **Anthony** | **Vaughan** |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | **Olga** | **Elizabeth** | **Vaughan** |
| | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **Central** District of **California**

Case number ____________

❑ Check if this is an amended filing

# Official Form 106A/B

## Schedule A/B: Property

12/15

**In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

## Part 1: Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

❑ No. Go to Part 2.
☑ Yes. Where is the property?

1.1 **Principal Residence**
Street address, if available, or other description
**7172 Jargon Street**
**Oak HIlls, CA 92344**
City State ZIP Code
**San Bernardino**
County

**What is the property?** Check all that apply.
☑ Single-family home
❑ Duplex or multi-unit building
❑ Condominium or cooperative
❑ Manufactured or mobile home
❑ Land
❑ Investment property
❑ Timeshare
❑ Other

**Who has an interest in the property?** Check one.
❑ Debtor 1 only
❑ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
❑ At least one of the debtors and another

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| **Current value of the entire property?** | **Current value of the portion you own?** |
|---|---|
| **$931,700.00** | **$931,700.00** |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**
**Fee Simple**

❑ **Check if this is community property** (see instructions)

**Other information you wish to add about this item, such as local property identification number:** **Acquired 02/10/2022**

**Source of Value:** **Zillow**

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here** ........ ➔ **$931,700.00**

## Part 2: Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

❑ No
☑ Yes

Case 6:25-bk-17927-RRB Doc 11-1 Filed 09/12/25 Entered 09/12/25 10:41:02 Desc
Exhibit Page 15 of 84

Debtor **Vaughan, Michael Anthony; Vaughan, Olga Elizabeth** Case number *(if known)*

3.1 Make: **Special Construction**
Model: **Chopper**
Year: **2005**
Approximate mileage: **100000**
Other information:
**VIN: 1D9SS64D01H251510**

**Who has an interest in the property?** Check one.
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$3,500.00** | **$3,500.00** |

If you own or have more than one, describe here:

3.2 Make: **Utility**
Model: **Trailer**
Year: **2014**
Approximate mileage:
Other information:

**Who has an interest in the property?** Check one.
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$500.00** | **$500.00** |

3.3 Make: **Ls Compact tractor**
Model: **Xj2025h**
Year: **2020**
Approximate mileage: **750**
Other information:

**Who has an interest in the property?** Check one.
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$8,000.00** | **$8,000.00** |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**

*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

- ☑ No
- ☐ Yes

4.1 Make:
Model:
Year:
Other information:

**Who has an interest in the property?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| | |

5. **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here** ........ ➔ **$12,000.00**

Debtor **Vaughan, Michael Anthony; Vaughan, Olga Elizabeth** Case number *(if known)* ____________

**Part 3:** Describe Your Personal and Household Items

| **Do you own or have any legal or equitable interest in any of the following items?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|
| 6. **Household goods and furnishings**<br>*Examples:* Major appliances, furniture, linens, china, kitchenware<br>❑ No<br>☑ Yes. Describe. ......... **misc. household goods and furnishings** | **$710.00** |
| 7. **Electronics**<br>*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games<br>❑ No<br>☑ Yes. Describe. ......... **misc. electronics** | **$200.00** |
| 8. **Collectibles of value**<br>*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles<br>☑ No<br>❑ Yes. Describe. ......... | |
| 9. **Equipment for sports and hobbies**<br>*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments<br>☑ No<br>❑ Yes. Describe. ......... | |
| 10. **Firearms**<br>*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment<br>☑ No<br>❑ Yes. Describe. ......... | |
| 11. **Clothes**<br>*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories<br>❑ No<br>☑ Yes. Describe. ......... **misc clothing** | **$200.00** |
| 12. **Jewelry**<br>*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver<br>❑ No<br>☑ Yes. Describe. ......... **misc. jewelry** | **$150.00** |

Debtor **Vaughan, Michael Anthony; Vaughan, Olga Elizabeth** Case number *(if known)* ______

13. **Non-farm animals**
*Examples:* Dogs, cats, birds, horses
☑ No
❑ Yes. Describe. .........

14. **Any other personal and household items you did not already list, including any health aids you did not list**
☑ No
❑ Yes. Give specific information. .............

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ........ ➔ **$1,260.00**

## Part 4: Describe Your Financial Assets

**Do you own or have any legal or equitable interest in any of the following?** — **Current value of the portion you own?** Do not deduct secured claims or exemptions.

16. **Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
☑ No
❑ Yes ........ Cash: ........

17. **Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
❑ No
☑ Yes ....................

| | Institution name: | |
|---|---|---|
| 17.1. Checking account: | **Chase** **Account Number: XXXXXX4906** | **$100.00** |
| 17.2. Checking account: | **Homestreet/Mechanics Bank** **Account Number: XXXXXX6857** | **$5.00** |
| 17.3. Checking account: | **Homestreet/Mechanics Bank** **Account Number: XXXXXX2061** | **$5.00** |

18. **Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
☑ No
❑ Yes .................... Institution or issuer name:

Debtor **Vaughan, Michael Anthony; Vaughan, Olga Elizabeth** Case number *(if known)* ____________

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☑ No

❑ Yes. Give specific information about them.................... Name of entity: % of ownership:

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No

❑ Yes. Give specific information about them.................... Issuer name:

21. **Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

❑ No

☑ Yes. List each account separately.

| Type of account: | Institution name: | |
|---|---|---|
| Additional account: | **Union Pension** | **unknown** |

Case 6:25-bk-17972-RB Doc 113 Filed 10/01/25 Entered 10/01/25 10:40:28 Desc Main Document Page 17 of 84

Debtor Vaughan, Michael Anthony; Vaughan, Olga Elizabeth Case number *(if known)*

22. **Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company

*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☑ No

❑ Yes ..................... Institution name or individual:

Electric:

Gas:

Heating oil:

Security deposit on rental unit:

Prepaid rent:

Telephone:

Water:

Rented furniture:

Other:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☑ No

❑ Yes .................... Issuer name and description:

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**

26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No

❑ Yes .................... Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☑ No

❑ Yes. Give specific information about them. ...

Case 6:25-bk-17972-RB Doc 13 Filed 01/23/26 Entered 01/23/26 19:41:02 Desc
Exhibit Page 13 of 84

Debtor Vaughan, Michael Anthony; Vaughan, Olga Elizabeth Case number *(if known)*

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**

*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☑ No

☐ Yes. Give specific information about them. ...

27. **Licenses, franchises, and other general intangibles**

*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☑ No

☐ Yes. Give specific information about them. ...

**Money or property owed to you?** — **Current value of the portion you own?** Do not deduct secured claims or exemptions.

28. **Tax refunds owed to you**

☑ No

☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years. ..................

Federal:
State:
Local:

29. **Family support**

*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☑ No

☐ Yes. Give specific information. ........

Alimony:
Maintenance:
Support:
Divorce settlement:
Property settlement:

30. **Other amounts someone owes you**

*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

☑ No

☐ Yes. Give specific information. ........

Case 6:25-bk-17972-RB Doc 1 Filed 09/23/25 Entered 09/23/25 16:10:02 Desc Main Document Page 15 of 54

Debtor **Vaughan, Michael Anthony; Vaughan, Olga Elizabeth** Case number *(if known)*

31. **Interests in insurance policies**

*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

❑ No

☑ Yes. Name the insurance company of each policy and list its value. ...

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| **Term Life Insurance through State farm** | **Spouse** | **$0.00** |

32. **Any interest in property that is due you from someone who has died**

If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☑ No

❑ Yes. Give specific information. ........

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**

*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☑ No

❑ Yes. Describe each claim. ..............

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☑ No

❑ Yes. Describe each claim. ..............

35. **Any financial assets you did not already list**

☑ No

❑ Yes. Give specific information. ........

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here** ........ ➔ **$110.00**

## Part 5: Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37. **Do you own or have any legal or equitable interest in any business-related property?**

❑ No. Go to Part 6.

☑ Yes. Go to line 38.

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

38. **Accounts receivable or commissions you already earned**

☑ No

❑ Yes. Describe. .........

Case 6:25-bk-17972-RB Doc 11-1 Filed 09/23/25 Entered 09/23/25 10:40:30 Desc
Exhibit Page 25 of 84

Debtor Vaughan, Michael Anthony; Vaughan, Olga Elizabeth Case number *(if known)*

39. **Office equipment, furnishings, and supplies**

*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

☑ No
❑ Yes. Describe. .........

40. **Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**

☑ No
❑ Yes. Describe. .........

41. **Inventory**

☑ No
❑ Yes. Describe. .........

42. **Interests in partnerships or joint ventures**

❑ No
☑ Yes. Describe .......

| Name of entity: | % of ownership: | |
|---|---|---|
| Land Sharks LLC | 100.00% | $0.00 |
| Vaughan Matthews Communication & Construction LLC | 51.00% | $0.00 |

43. **Customer lists, mailing lists, or other compilations**

☑ No
❑ Yes. **Do your lists include personally identifiable information** (as defined in 11 U.S.C. § 101(41A))**?**

❑ No
❑ Yes. Describe. .........

44. **Any business-related property you did not already list**

☑ No
❑ Yes. Give specific information .........

45. **Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached for Part 5. Write that number here** ........ ➔ **$0.00**

Debtor Vaughan, Michael Anthony; Vaughan, Olga Elizabeth Case number *(if known)* ______

## Part 6: Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.

**If you own or have an interest in farmland, list it in Part 1.**

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No. Go to Part 7.

❑ Yes. Go to line 47.

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

47. **Farm animals**

*Examples:* Livestock, poultry, farm-raised fish

☑ No

❑ Yes ..........................

48. **Crops—either growing or harvested**

☑ No

❑ Yes. Give specific information. ............

49. **Farm and fishing equipment, implements, machinery, fixtures, and tools of trade**

☑ No

❑ Yes ..........................

50. **Farm and fishing supplies, chemicals, and feed**

☑ No

❑ Yes ..........................

51. **Any farm- and commercial fishing-related property you did not already list**

☑ No

❑ Yes. Give specific information. ............

52. **Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached for Part 6. Write that number here** .................................................. ➔ **$0.00**

## Part 7: Describe All Property You Own or Have an Interest in That You Did Not List Above

53. **Do you have other property of any kind you did not already list?**

*Examples:* Season tickets, country club membership

☑ No

❑ Yes. Give specific information. ............

Case 6:25-bk-17972-RB Doc 1 Filed 09/12/25 Entered 09/12/25 10:40:02 Desc Main Document Page 24 of 84

Debtor **Vaughan, Michael Anthony; Vaughan, Olga Elizabeth** Case number *(if known)*

| | | | | |
|---|---|---|---|---|
| 54. | **Add the dollar value of all of your entries from Part 7. Write that number here** ➔ | | | **$0.00** |

## Part 8: List the Totals of Each Part of this Form

| | | | | |
|---|---|---|---|---|
| 55. | **Part 1: Total real estate, line 2** ➔ | | | **$931,700.00** |
| 56. | **Part 2: Total vehicles, line 5** | **$12,000.00** | | |
| 57. | **Part 3: Total personal and household items, line 15** | **$1,260.00** | | |
| 58. | **Part 4: Total financial assets, line 36** | **$110.00** | | |
| 59. | **Part 5: Total business-related property, line 45** | **$0.00** | | |
| 60. | **Part 6: Total farm- and fishing-related property, line 52** | **$0.00** | | |
| 61. | **Part 7: Total other property not listed, line 54** | + **$0.00** | | |
| 62. | **Total personal property.** Add lines 56 through 61. | **$13,370.00** | Copy personal property total ➔ | + **$13,370.00** |
| 63. | **Total of all property on Schedule A/B.** Add line 55 + line 62. | | | **$945,070.00** |

Case 6:25-bk-17927-RB Doc 121 Filed 12/12/25 Entered 12/12/25 18:31:19 Desc
Main Document Page 4 of 10

Fill in this information to identify your case:

| | | | |
|---|---|---|---|
| Debtor 1 | Michael | Anthony | Vaughan |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | Olga | Elizabeth | Vaughan |
| | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: Central District of California

Case number (if known) 6:25-bk-17927

☒ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).**

1. **Do any creditors have claims secured by your property?**
   - ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
   - ☑ Yes. Fill in all of the information below.

## Part 1: List All Secured Claims

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | *Column A* **Amount of claim** Do not deduct the value of collateral. | *Column B* **Value of collateral that supports this claim** | *Column C* **Unsecured portion** If any |
|---|---|---|---|
| 2.1 CENTRAL LOAN ADMIN/CENLAR | $215,551.00 | $931,700.00 | $0.00 |

**2.1 CENTRAL LOAN ADMIN/CENLAR**
Creditor's Name
425 PHILLIPS BLVD
Number Street

EWING, NJ 08618
City State ZIP Code

**Describe the property that secures the claim:**
Principal Residence
7172 Jargon Street Oak Hills, CA 92344

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Who owes the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☑ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
- ☑ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) ______

**Date debt was incurred** 2/9/2022 **Last 4 digits of account number** 5 3 0 6

**Remarks:** 2nd T.D Principal Residence

**Add the dollar value of your entries in Column A on this page. Write that number here:** $215,551.00

Case 6:25-bk-17927-RB Doc 21-1 Filed 12/23/25 Entered 12/23/25 11:37:19 Desc
Exhibit Page 4 of 10

| | First Name | Middle Name | Last Name |
|---|---|---|---|
| Debtor 1 | Michael | Anthony | Vaughan |
| Debtor 2 | Olga | Elizabeth | Vaughan |

Case number *(if known)* 6:25-bk-17927

**Part 1:** **Additional Page**

**After listing any entries on this page, number them beginning with 2.3, followed by 2.4, and so forth.**

| | *Column A* **Amount of claim** Do not deduct the value of collateral. | *Column B* **Value of collateral that supports this claim** | *Column C* **Unsecured portion** If any |
|---|---|---|---|
| 2.2 ROUNDPOINT MORTGAGE | $709,615.00 | $931,700.00 | $0.00 |

Creditor's Name: ROUNDPOINT MORTGAGE

Number Street: 5032 PARKWAY PLAZA BLVD

City State ZIP Code: CHARLOTTE, NC 28217

**Describe the property that secures the claim:**

Principal Residence
7172 Jargon Street Oak HIlls, CA 92344

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Who owes the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☑ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
- ☑ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) ____________

**Date debt was incurred** 2/4/2022 **Last 4 digits of account number** 1 0 8 1

**Remarks:** 1st T.D. Principal Residence

**Add the dollar value of your entries in Column A on this page. Write that number here:** $709,615.00

**If this is the last page of your form, add the dollar value totals from all pages. Write that number here:** ____________

Case 6:25-bk-17927-RB Doc 21 Filed 12/12/25 Entered 12/12/25 11:30:19 Desc Main Document Page 5 of 10

Debtor 1 Michael Anthony Vaughan Case number (if known) 6:25-bk-17927

Debtor 2 Olga Elizabeth Vaughan

First Name Middle Name Last Name

**Part 1: Additional Page**

After listing any entries on this page, number them beginning with 2.3, followed by 2.4, and so forth.

| | Column A | Column B | Column C |
|---|---|---|---|
| | **Amount of claim** Do not deduct the value of collateral. | **Value of collateral that supports this claim** | **Unsecured portion** If any |
| 2.3 Sun Run | $20,000.00 | $931,700.00 | $0.00 |
| 2.4 Wells fargo | $8,000.00 | $8,000.00 | $0.00 |

**2.3 Sun Run**

Creditor's Name

600 California St., #1800

Number Street

San Francisco, CA 94108

City State ZIP Code

**Describe the property that secures the claim:**

Principal Residence
7172 Jargon Street Oak HIlls, CA 92344

**As of the date you file, the claim is:** Check all that apply.

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Who owes the debt?** Check one.

- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☑ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☑ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.

- ☑ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) ____________

**Date debt was incurred** 2024 **Last 4 digits of account number** 8 0 2 1

**2.4 Wells fargo**

Creditor's Name

PO Box 3072

Number Street

Cedar Rapids, IA 52406-3072

City State ZIP Code

**Describe the property that secures the claim:**

2020 Ls Compact tractor Xj2025h

**As of the date you file, the claim is:** Check all that apply.

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Who owes the debt?** Check one.

- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☑ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.

- ☑ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) ____________

**Date debt was incurred** 06/01/2020 **Last 4 digits of account number** 4 0 0 0

**Add the dollar value of your entries in Column A on this page. Write that number here:** $28,000.00

**If this is the last page of your form, add the dollar value totals from all pages. Write that number here:** $953,166.00

| | | | | |
|---|---|---|---|---|
| Debtor 1 | Michael | Anthony | Vaughan | Case number *(if known)* 6:25-bk-17927 |
| Debtor 2 | Olga | Elizabeth | Vaughan | |
| | First Name | Middle Name | Last Name | |

## Part 2: List Others to Be Notified for a Debt That You Already Listed

**Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.**

1. Trustee Corps
Name
17100 Gillette Ave.
Number Street

Irvine, CA 92614
City State ZIP Code

**On which line in Part 1 did you enter the creditor?** 2.2

**Last 4 digits of account number** 1 0 8 1

# EXHIBIT 6

**Fill in this information to identify your case:**

Debtor 1: Michael Anthony Vaughan
(First Name / Middle Name / Last Name)

Debtor 2 (Spouse, if filing): Olga Elizabeth Vaughan
(First Name / Middle Name / Last Name)

United States Bankruptcy Court for the: Central District of California

Case number (If known): 6:25-bk-17927 RB

☐ Check if this is an amended filing

Official Form 108

# Statement of Intention for Individuals Filing Under Chapter 7

12/15

**If you are an individual filing under chapter 7, you must fill out this form if:**

- **creditors have claims secured by your property, or**
- **you have leased personal property and the lease has not expired.**

**You must file this form with the court within 30 days after you file your bankruptcy petition or by the date set for the meeting of creditors, whichever is earlier, unless the court extends the time for cause. You must also send copies to the creditors and lessors you list on the form.**

**If two married people are filing together in a joint case, both are equally responsible for supplying correct information. Both debtors must sign and date the form.**

**Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known).**

## Part 1: List Your Creditors Who Have Secured Claims

1. **For any creditors that you listed in Part 1 of *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D), fill in the information below.**

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
|---|---|---|
| Creditor's name: Central Loan Admin/Cenlar<br>Description of property securing debt: Real Property: 7172 Jargon St. Oak Hills, CA 92344 | ☑ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement*.<br>☐ Retain the property and [explain]: ______ | ☐ No<br>☑ Yes |
| Creditor's name: Roundpoint Mortgage<br>Description of property securing debt: Real Property: 7172 Jargon St. Oak Hills, CA 92344 | ☑ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement*.<br>☐ Retain the property and [explain]: ______ | ☐ No<br>☑ Yes |
| Creditor's name: Sun Run<br>Description of property securing debt: Solar Panels | ☑ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement*.<br>☐ Retain the property and [explain]: ______ | ☑ No<br>☐ Yes |
| Creditor's name: Wells Fargo<br>Description of property securing debt: 2020 Ls Compact Tractor Xj2025h | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☑ Retain the property and enter into a *Reaffirmation Agreement*.<br>☐ Retain the property and [explain]: ______ | ☐ No<br>☑ Yes |

Debtor 1 Michael Anthony Vaughan
First Name Middle Name Last Name

Case number (if known) 6:25-bk-17927 RB

**Part 2: List Your Unexpired Personal Property Leases**

**For any unexpired personal property lease that you listed in *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 106G), fill in the information below. Do not list real estate leases. *Unexpired leases* are leases that are still in effect; the lease period has not yet ended. You may assume an unexpired personal property lease if the trustee does not assume it. 11 U.S.C. § 365(p)(2).**

| Describe your unexpired personal property leases | Will the lease be assumed? |
|---|---|
| Lessor's name:<br>Description of leased property: | ☐ No<br>☐ Yes |
| Lessor's name:<br>Description of leased property: | ☐ No<br>☐ Yes |
| Lessor's name:<br>Description of leased property: | ☐ No<br>☐ Yes |
| Lessor's name:<br>Description of leased property: | ☐ No<br>☐ Yes |
| Lessor's name:<br>Description of leased property: | ☐ No<br>☐ Yes |
| Lessor's name:<br>Description of leased property: | ☐ No<br>☐ Yes |
| Lessor's name:<br>Description of leased property: | ☐ No<br>☐ Yes |

**Part 3: Sign Below**

**Under penalty of perjury, I declare that I have indicated my intention about any property of my estate that secures a debt and any personal property that is subject to an unexpired lease.**

✗ [signature] Signature of Debtor 1

Date 9 2 2026
MM / DD / YYYY

✗ [signature] Signature of Debtor 2

Date 9 2 2026
MM / DD / YYYY